IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CARL LeBLANC,

        Plaintiff,

vs.                                                                                     Civil No. 04-861 RLP

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

## MEMORANDUM OPINION AND ORDER

I.      Background

This matter comes before the court on Plaintiff's Motion to Reverse or Remand Administrative Agency Decision. (Docket No. 11).

Plaintiff filed applications for Supplemental Security Income and Disability Income benefits in November 2002. His applications were denied at the first and second levels of administrative review. An Administrative Law Judge ("ALJ" herein) conducted a hearing on January 21, 2004, and denied Plaintiff's claims in a written decision dated February 20, 2004. On July 2, 2004, the Appeals Council declined to review the ALJ's decision, making the ALJ's decision the final decision of the Commissioner of Social Security.

Plaintiff sustained a work-related back injury in 1991, for which he received non-surgical treatment. (Tr. 118, 131, 151, 65, 219). He completed vocational training in computers, and worked as a computer salesman/consultant from 1993 until May 2001. (Tr. 71, 151, 85). In 2002, he spent five months working as a customer service representative for a telecommunications company, and three months as a self-employed handyman. (Tr. 85). He stopped working as of September 28, 2002, after reinjuring his back. (Tr. 51, 65). He alleges disability due to pain and functional

limitations caused by  herniated discs, degenerative disc disease,  sciatica, depression, gout and bilateral carpal tunnel syndrome.  (Tr.  65, 72, 35, 92-100).

The first physician to exam Plaintiff after he reinjured his back in September 2002 was G.T. Davis, M.D., who performed an evaluation on January 27, 2003, at the request of the Commissioner of Social Security.  (Tr. 151-155).  Significant positive findings at that time included physical distress and discomfort, a slow and stiff gait, significant bilateral paralumbar muscle spasm, rigidity of the back consistent with spasm, some guarding with hip rotation and left hip tenderness.  Significant negative findings included the ability to heel/toe walk, symmetrical upper and lower limb measurements without atrophy, good mobility of the neck, negative bilateral straight leg raising, no signs of radiculopathy, good motion of the shoulders, elbows, wrists, and digits, intact sensory, grip and pinch strength of the upper extremities, good motion of the hips, knees and ankles, DTRs of  2+ in the ankles and knees with intact motor and sensory exam. Dr. Davis obtained x-rays which indicated a normal pelvis, and degenerative changes in the lumbar spine.  He advised Plaintiff to follow up with his primary care doctor, Peter Wong, for subjective complaints indicative of carpal tunnel syndrome, and further stated that until the cause of his muscle spasm and back pain could be determined, Plaintiff should refrain from much bending, lifting or twisting.

Plaintiff was seen by Dr. Wong, a family practitioner,  on February 11, 2002, for "back pain and depression." (Tr. 131).  With regard to depression, Dr. Wong noted that Plaintiff "was evaluated previously in another facility and was thought to have perhaps a depression and was placed on Prozac but he said that he could not take that and he really does not want to be on anything else."  Id.

Depression is not mentioned again in any medical record.[1]  On physical examination, Dr. Wong noted that Plaintiff had good 5/5 strength in his legs, although he walked with a shuffling gait.  He could stand on his heels and toes, and could squat without difficulty. Examination of his hands showed positive signs of carpal tunnel syndrome.  Dr. Wong scheduled an MRI to evaluate Plaintiff's back complaints, a neurological evaluation to evaluate his hands, prescribed Neurontin for pain, and provided Plaintiff with wrist splints.

On February 21 Plaintiff was examined by Zakia Bell, M.D., a neurologist. Testing demonstrated definite carpal tunnel on the right and milder, earlier carpal tunnel on the left.   (Tr. 123-124).

Plaintiff was evaluated by Roy Blackburn, M.D., a specialist in pain management, on March 4, 2002.  (Tr. 118-122).  After taking a history and performing a lengthy physical examination[2], Dr. Blackburn diagnosed probable myofacial mechanical back pain with sciatica.[3]  He recommended

---

[1]In written materials, Plaintiff indicated that Dr. Wong had prescribed Neurontin for pain and depression.  (Tr. 106).  However, Dr. Wong's notes indicate that this medication was prescribed for pain control.  (Tr. 131).

[2]Significant findings included left antalgic gait, probably due to left hallux (great toe) pain; need for standby assist with heel toe ambulation; right shoulder and right pelvis depression in standing posture; lower extremity range of motion within functional range; 1.5 cm. leg length discrepancy, left longer than right;  decreased active range of lumbosacral motion; right gluteal trigger point reproducing some but not all of pain complaints; non-tender right hip bursa; negative facet loading; positive straight leg raise supine and sitting;  positive Patrick's test (bilateral);  negative sacroiliac strain maneuvers; 5/5 bilateral lower extremity strength except for extensor which was limited by pain; decreased sensation to light touch subjectively on the right lower extremity in the lateral aspect of the hit to the lateral foot, otherwise intact; DTRs 2 and equal.  (Tr. 119-120).

[3]This was the most probable diagnosis.  Dr. Blackburn indicated that other possible etiologies included muscle imbalance due to leg length discrepancy, spinal stenosis, lumbar HNP/protrution with intermittent neuritis, and non-spinal etiology.  (Tr. 120).

additional x-rays, work up of hip complaints by Dr. Wong, medication for insomnia[4] and low back pain[5], lumbar epidural injections, physical therapy, back exercises, use of a cane over unfamiliar territory, a heel lift and a lumbar support pillow. (Tr. 121). Plaintiff had been previously diagnosed with gout, and had been taking medication for that condition since July 2000. (Tr. 106). Dr. Blackburn recommended that he discuss this condition with Dr. Wong. (Tr.121).

Plaintiff returned to Dr. Wong on March 11. (Tr. 130). Dr. Wong summarized the findings of Drs. Bell and Blackburn, and performed a physical examination which demonstrated good heel-toe walk, squat, and tenderness of the paraspinal muscles in the lumbar region. He recommended use of wrist splints, MRI of the lumbar spine, continued care through the spine clinic and weight loss.

MRI of Plaintiff's lumbar spine performed on April 6, 2003, disclosed multi-level disc disease with extruded disc material at L3-4 causing mild anterior thecal sac impingement without evidence of nerve root impingement. (Tr. 149-150).

Plaintiff returned to Dr. Wong on May 5, 2003, specifically complaining of a 4-day flare up of gout in his right foot. (Tr. 182). Physical examination revealed tenderness of the right dorsum (top) of the foot, without abnormality, redness or discoloration. Dr. Wong ordered lab studies and renewed a prescription for Indomethacin, a medication for gout (Plaintiff's prior prescription had run out). One week later Plaintiff returned for a general physical exam. He was advised to exercise to lose weight, and his gout medication was changed to Allopurinol. (Tr. 180-181).

Plaintiff returned to Dr. Wong on September 26, 2003, complaining chronic ankle and foot pain, a new pain in his knee different from prior episodes of gout, and nausea from taking Allopurinol.

_____

[4]Elavil.

[5]Baclofen.

Plaintiff had good range of motion in his knees, with no erythema, effusion, tenderness, ligamentous laxity or crepitus.  Dr. Wong felt the knee pain was due to arthritis aggravated by stair climbing, which Plaintiff stated he had been doing for exercise. Dr. Wong recommended  that Plaintiff continued walking but discontinue climbing stairs, that he use Ibuprofen as needed and that he return if he did not improve.  (Tr. 178-179).

A hearing was held before an ALJ on January 21, 2004.  (Tr. 209-238).  Plaintiff testified that he suffered from back pain, carpal tunnel in both wrists, gout in both feet and ankles,  and depression and anxiety because of his inability to work.  (Tr. 218, 226-232).  He stated that his pain prevented him from doing almost all household chores, but that he was able to attend classes five days a week, driving 45 minutes each way to get to school, and that he did not need help with personal grooming.  (Tr. 223, 220, 224, 226).  He stated that he was doing well in school, receiving almost straight As, but that his teachers permitted him to stand and to elevate his legs when necessary.  (Tr.  226, 231).  He also stated that he suffered from medication side effects (bad dreams, dizziness, nausea), and therefore he did not take his medications when he had to drive.  (Tr. 219-220, 231).

The ALJ called a vocational expert ("VE" herein), and asked her to assume "an individual the age, education, background and experience of (Plaintiff  . . . who) could lift, oh, 10 pounds.  Needs to be able to alternate sit and stand occasionally, he needs to work in a job that does not require repetitive use of the hands, no excessive standing, walking, bending, twisting, no climbing."  (Tr. 235).  The VE testified that such an individual would be unable to perform any of Plaintiff's past jobs, but would be able to perform the job of surveillance system monitor, of which there were 803,000 available in the national economy, and 2,100 in New Mexico.  (Tr. 235-236).

Plaintiff's attorney asked the ALJ to assume additional limitation, consisting of the need to

elevate the legs throughout the day to relieve pain and difficulty with attention and concentration, persistence and pace due to pain medication and pain:

> VE:   He could get the job, but not be able to maintain (the job of surveillance system monitor.).
>
> ALJ:   Because of the lack of concentration?
>
> VE:   Well, because of the lack of concentration and the elevating of the legs.  If he had to elevate his legs and have to take his face off the screen to see the screens up there.
>
> ALJ:   Well, you can put your legs on a stool, or something like that - -
>
> VE:   Right.  And if he is - - but really it would be the concentration, the attention to task.

(Tr. 237).

## II.    The Decision of the ALJ

The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged date of onset of disability (step one);  that his impairments of degenerative disc disease of the lumbar spine and right carpal tunnel syndrome were severe, while his  impairments of gout and sciatica, left knee pain, depression and anxiety were not severe (step two); that none of his impairments met the criteria of a listed impairment (step three); that he was not entirely credible; that  he retained the residual functional capacity for a significant range of sedentary work; that he could not return to his past relevant work (step four); and that his residual functional capacity would permit him to perform the job of surveillance system monitor, which was available in the regional and national economies (step five).

## III.    Issues Raised on Appeal

The Plaintiff raises the following issues on appeal:

(1)     Whether substantial evidence and/or the application of correct legal principles support the ALJ's finding that the impairments of gout, depression and sciatica are not severe.

(2)     Whether the hypothetical question posed to the vocational expert was based substantial evidence.

(3)     Whether substantial evidence supports the ALJ's finding that there are substantial jobs in the regional and national economies which an individual with Plaintiff's limitations could perform.

(4)     Whether the Commissioner erred by failing to provide necessary background information to a consulting medical examiner, and by failing to discuss findings of the consulting medical examiner that supported Plaintiff's complaints of pain and functional limitation.

**IV.    Scope of Review**

I review the ALJ's decision only to determine whether her factual findings are supported by substantial evidence and whether she applied the correct legal standards. *See O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir.1994). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations omitted). In making the substantial evidence determination, I neither reweigh the evidence nor substitute my judgment for that of the ALJ. *See Thompson*, 987 F.2d at 1487. If the Commissioner's factual findings are supported by substantial evidence, they must be given conclusive effect. 42 U.S.C. §405(g). Substantial evidence is that which a reasonable person might find sufficient to support a particular conclusion. *Richardson v. Perales*, 402 U.S. 389, 401-402 (1971). Further, evidence must be more than a

scintilla, *Id.*, at 403, but may be less than a preponderance. *Flint v. Sullivan*, 951 F.2d 264, 266 (10th Cir. 1991).

**V.  Discussion.**

   **A.  Substantial evidence and the application of correct legal principles support the ALJ's  findings at step two of the sequential evaluation process.**

   Plaintiff claims that substantial evidence does not support the ALJ's determination that his conditions of gout, depression and sciatica were not severe, thereby committing reversible error at step two of the sequential evaluation process.

   Step two of the sequential evaluation process involves a determination of whether  "the claimant has a medically severe impairment or combination of impairments." *Bowen v. Yucker*t, 482 U.S. 137, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987)). This determination is governed by certain "severity regulations," and is based on medical factors alone.  §§20 C.F.R. 404.1520(c), 416.920(c)). The severity regulations require that a claimant make a threshold showing that his medically determinable impairment or combination of impairments significantly limits his ability to do basic work activities. §§20 C.F.R.  404.1521(b), 416.921(b) (1986)). If this showing is not made, benefits are denied at step two.  *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir.1988). If the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three. *Id*. The ALJ in this case concluded that plaintiff suffered from severe impairments of degenerative disc disease and bilateral carpal tunnel syndrome, and proceeded to the remaining steps of the sequential evaluation process.  Therefore, I find no error at step two.

   Plaintiff's real complaint is that the ALJ failed to consider his allegations of  impairment due to gout, sciatica and depression in determining his residual functional capacity ("RFC" herein).  Social

8

Security Regulation 96-8P requires that all allegations of physical and mental limitations be considered in assessing RFC. 1996 WL 374184, *5. This evaluation necessarily includes assessment of credibility as well as consideration of medical evidence. Plaintiff does not challenge the ALJ's credibility determination in this case. Further, substantial evidence supports the ALJ's determination that the conditions of gout, sciatica and depression do not interfere with Plaintiff's ability to perform basic work activities:

Gout

Plaintiff was diagnosed with gout at least two years prior to his alleged date of onset of disability. (Tr. 106). He did not complain of foot pain or gout related symptoms in written material submitted to the Commissioner on November 26, 2002 (Tr.72-73), at the time of his consultative exam in January 2003 (Tr. 151-153) or when evaluated by Dr. Wong in February 2003. (Tr. 131-132). Plaintiff had signs and symptoms consistent with gout when evaluated by Dr. Blackburn in March 2003, and was referred to Dr. Wong for treatment. (Tr. 119). However, when he saw Dr. Wong a week later gout was not mentioned, and Dr. Wong noted "good heel-toe walk, squat and negative cross-over sign." (Tr. 130). Plaintiff complained of a gout flare up on May 5, 2003, and stated that medication combined with diet helped some. (Tr. 182). When seen on September 26 for a complaint of knee pain, Plaintiff reported being on a new exercise program and was advised to continue walking. (Tr. 178). Accordingly, I find that there is substantial evidence that Plaintiff's gout did not limit his residual functional capacity below that which was assumed by the ALJ.

Sciatica

Sciatica, or lumbar radiculopathy, is pain in the lower back or hip that radiates down from the buttock to the back of one thigh and into the leg. www.spine-health.com/topics/

conserv/sciaex/sciaex01.html.  The ALJ noted that Plaintiff has been diagnosed with sciatica. (Tr. 16, referring to Tr. 120). The ALJ also noted  that MRI studies did not demonstrate nerve root impingement, that Plaintiff was able to engage in an exercise program that involved stair climbing which aggravate his knees, but apparently not his back and that he was advised to continue walking. (Tr. 16, referring to Tr. 149-150, 178).  Accordingly, I find that there is substantial evidence that Plaintiff's sciatica did not limit his residual functional capacity below that which was assumed by the ALJ.

<u>Depression</u>

There is no medical evidence to support the presence of current, diagnosed depression. Plaintiff takes no medication for depression.  His  admitted  activities, which include church-based volunteer work, group bible study and attending school (Tr. 151, 105-106, 237-238),  constitute substantial evidence that Plaintiff's depression, if any, did not limit his residual functional capacity.

**B.     The hypothetical question posed to the vocational expert was based substantial evidence.**

The hypothetical question posed to the VE asked her to assume a person of Plaintiff's age, education and experience, who could lift 10 pounds, needed a sit/stand option, could not use his hands in repetitive motion, could not stand, walk, bend or twist excessively, and could not climb. Plaintiff asserts that the hypothetical question was incomplete because it did not include the additional limitations of the need to elevate his leg throughout the day, and medication side effects of nausea, sweating, dizziness, drowsiness and difficulty with concentration and focus.

Hypothetical questions "need only reflect impairments and limitations that are borne out by the evidentiary record." *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir.1996).  Based on this

hypothetical it is apparent that the ALJ did not fully credit Plaintiff's complaints of severe medication side effects and the need to elevate his leg throughout the day. There is substantial evidence to support the ALJ.  Plaintiff is able to drive relatively long distances, attend school on a daily basis, excel at school work, participate in volunteer work, attend church and bible study and attend to his personal needs.  Such activities constitute substantial evidence that either medication side effects are not as severe as Plaintiff claimed, or that he does not need medication to engage in these activities. With regard to the need to elevate his leg,  the record indicates that Plaintiff's gout problems are intermittent rather than constant, and that medication is effective.  Further, the VE clarified her answer, indicating that elevating a leg would not preclude performance of the job identified.

**C.      Substantial evidence supports the ALJ's finding that substantial jobs exist in the regional/national economy.**

At step five of the sequential evaluation process, the burden of going forward shifts to the Commissioner to establish that a claimant retains the capacity to perform alternative work activity and that the specific type of job or jobs  he can do exist in the national or regional economy. *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir.1992); §42 U.S.C.  423(d)(2)(A). In *Trimiar*, the 10th Circuit held that the existence of  650 to 900 jobs in region was significant number.  *Id.* at 1330.  In this case, the VE testified that there were  803,000 surveillance system monitor jobs available in the national economy, and 2,100 in New Mexico.   The VE's testimony is substantial evidence that a significant number of jobs exists, satisfying the ALJ's burden at step five.

**D.      The Commissioner did not fail to provide necessary background information to a consulting medical examiner, and the ALJ adequately discussed the findings of Dr. Davis.**

Plaintiff complains that the Commissioner did not provide Dr. Davis, the consulting medical

examiner, with his medical records.  Plaintiff's complaint with without basis.  Plaintiff did not see any

medical providers between the time he reinjured his back and the date of Dr. Davis' examination.  (Tr.

151).  Dr. Davis took a detailed history form Plaintiff.  Plaintiff does not point to any medical records

in existence at the time of Dr. Davis' examination which would have constituted relevant back ground

information.

Plaintiff contends that the ALJ erred by failing to discuss the physical examination findings

of Dr. Davis which support his claim of impairment:  That Plaintiff was in some distress, walked with

a slow, stiff gait,  was uncomfortable moving around and had significant muscle spasm.   The ALJ

referred to Dr. Davis' exam findings in some detail[6].   The ALJ found that Plaintiff was limited in the

amount he could walk, and that he required a sit/stand option.  I find no error in the ALJ's evaluation

of Dr. Davis' opinion.

## VI.    Conclusion

For these reasons, Plaintiff's Motion to Reverse or Remand Administrative Agency Decision

is denied, and the decision of the Commissioner of Social Security, denying Plaintiff's applications

for Disability Insurance Benefits and Supplement Security Income is affirmed.

Richard L. Puglisi
United States Magistrate Judge
(sitting by designation)

---

[6]The ALJ's opinion states:  "While the claimant stated that he experienced frequent pain and
stiffness in his low back, he could walk on his toes and heels and squat down halfway when evaluated on
January 27, 2003.  His gait was slow and stiff, his lumbar range of motion was limited.  Bilateral straight
leg raising test was negative.  He had rigidity of the para-lumbar muscles, but no radicular signs.  In the
lower extremities seen at the L4-S1 level with vacuum disc phenomenon and mild end plate changes
including a small posterior osteophyte.".  (Tr. 17).